UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Delve Health, LLC, | No. 21-cv-2570 (KMM/TNL) |
| Petitioner, | |
| v. | **ORDER** |
| Perry Graham, | |
| Respondent. | |

This matter is before the Court on Delve Health, LLC's ("Delve") Motion for Default Judgment. [ECF No. 19]. For the reasons that follow, the motion is denied, and the Clerk of Court's entry of default is set aside.

I.  **Procedural History**

On November 26, 2021, Delve filed a Petition to Compel Arbitration against the Respondent, Perry Graham. [ECF No. 1]. Delve alleges that Mr. Graham served as its sales representative under the parties' contract, but in April 2021, he violated the terms of the agreement by working with a competitor, Anju Software. Delve terminated the agreement for cause, but Mr. Graham claimed that Delve still owed him a sizeable commission, and he filed an arbitration proceeding in California with the American Arbitration Association ("AAA") seeking to recover it. After AAA notified Delve that the arbitration initiated by Mr. Graham would be governed by California law, Delve initiated this action. According to Delve, the arbitration clause in the parties' contract designates Hennepin County, Minnesota, as the exclusive location for litigation of any

dispute between the parties. Delve also alleges that the contract requires their disputes to be governed by Minnesota law. Accordingly, Delve seeks declaratory and injunctive relief indicating that the parties' arbitration must take place in Hennepin County in the State of Minnesota and prohibiting Mr. Graham from pursuing the California arbitration. Delve also alleges that Mr. Graham breached the parties' contract by commencing an arbitration in California, thereby causing Delve Health to incur damages in the form of legal fees and other litigation-related costs.

Delve commenced this action on November 26, 2021, and the Clerk of Court issued Summons on November 29, 2021. On January 3, 2022, Delve filed Proof of Service, indicating that indicating that a California Registered Process Server effected personal service of the Summons on Mr. Graham in Fremont, California, on December 14, 2021. [ECF No. 7]. Under Rule 12(a)(1) of the Federal Rules of Civil Procedure, Mr. Graham's response to the Petition was due January 4, 2022, but Mr. Graham did not file an answer or other response by that deadline. On January 25, 2022, Delve Health filed an Application for Entry of Default against Mr. Graham pursuant to Fed. R. Civ. P. 55(a). [ECF No. 11]. On February 2, 2022, the Clerk entered default against Mr. Graham. [ECF No. 14].

Delve filed its Motion for Default Judgment on June 8, 2022. [ECF No. 19]. The motion asks the Court to enter an Order granting it the following injunctive relief:

> 1.  Direct Respondent Perry Graham [to] commence any arbitration on any claim arising under the Contract in the manner provided for under the Contract in Hennepin County and State of Minnesota and under the laws of the State of Minnesota;

2

      2.    Restrain[] Respondent from engaging in any case or proceeding under the Contract including any arbitration except as allowed under the Contract in Hennepin County in the State of Minnesota and under the laws of the State of Minnesota;

      3.    Order respondent Perry Graham [to] pay Delve Health, LLC damages including the costs of bringing the Petition herein including legal fees and such other relief including injunctive relief under the Contract and as the Court may deem just or equitable.

[ECF No. 19 at 2–3].

On June 28, 2022, several months after his response to the Petition was due, Mr. Graham filed his Answer and Counterclaims against Delve. [Answer and Countercl., ECF No. 23]. In his Answer, Mr. Graham admits that "Minnesota state substantive law applies to this dispute." [*Id.* ¶ 2]. He admits the allegations in Paragraph 22 of the Petition, where Delve asserts that the "Contract mandates all claims arising under the Contract are to be litigated exclusively in Hennepin County in the State of Minnesota exclusively." [*Id.* ¶ 14; Pet. ¶ 22]. He admits that he signed the contract attached as Exhibit 1 to Delve's Petition, but he asserts that some provisions of the contract may be unenforceable under Minnesota law, including the Minnesota Termination of Sales Representatives Act ("MTSRA"), Minn. Stat. § 325E.37. [Answer and Countercl. ¶ 3]. Mr. Graham further affirmatively alleges that the MTSRA "precludes Delve from compelling arbitration over Graham's objection. Graham does not object to litigating this dispute in this Court rather than arbitrating this dispute in California." [*Id.* ¶ 10].

Mr. Graham also brings three Counterclaims. First, Mr. Graham asserts that Delve breached the parties' agreement by failing to pay commissions he was owed under the

3

agreement. [*Id.* ¶¶ 28–34[1]]. Second, he claims that Delve violated the MTSRA by terminating the parties' agreement without good cause. [*Id.*¶¶ 35–42]. Finally, he asserts that Delve's failure to pay owed commissions is a violation of Minn. Stat. § 181.145, which requires prompt payment of commissions to salespeople and imposes certain penalties for late payments. Mr. Graham also claims that he is entitled to recover attorney's fees and costs under Minn. Stat. § 181.171 for the violation of the prompt-payment statute. [*Id.* ¶¶ 43–48].

At the same time that he filed the Answer and Counterclaims, Mr. Graham filed a memorandum opposing the Motion for Default Judgment. [ECF No. 24]. In his opposition brief, Mr. Graham again argues that the MTSRA prohibits Delve from compelling him to arbitrate his claims over his objection. [*Id.* at 1 (citing Minn. Stat. § 325E.37, subd. 5)]. In addition, Mr. Graham argues that Delve's Motion for Default Judgment should be denied and the Clerk's entry of default should be set aside under the multi-factor test articulated in *Johnson v. Dayton Electric Manufacturing Company*, 140 F.3d 781, 784 (8th Cir. 1998). [*Id.* at 2–3].

## II. Discussion

### A. Legal Standards

Proceeding to judgment by default takes place in two stages. At the first stage, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to

---

[1] The numbering of paragraphs in Mr. Graham's Answer and Counterclaim restarts at number 1 at the beginning of his Counterclaims on page 5 of the document.

4

plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). At the second, except in cases where the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(1)–(2).

Default judgments are generally disfavored because there is a "judicial preference for adjudication on the merits." *Belcourt Pub. Sch. Dist. v. Davis*, 786 F.3d 653, 661 (8th Cir. 2015) (internal quotation marks omitted). Entry of default judgment "should be a rare judicial act," *id.*, but it is "a necessity" in some circumstances, *Trs. of the St. Paul Elec. Constr. Indus. Fringe Benefit Funds v. Martens Elec. Co.*, 485 F. Supp. 2d 1063, 1064 (D. Minn. 2007). Default judgments are rarely entered in cases that involve a "marginal failure to meet pleading or other deadlines," though they are also rarely excused where there has been "contumacious or intentional delay or disregard for deadlines and procedural rules." *Johnson*, 140 F.3d at 784. Ultimately, the decision whether to grant or deny a motion for default judgment is committed to the district court's discretion. *Belcourt*, 286 F.3d at 661.

Although the Clerk is required to enter a party's default for failing to plead or otherwise defend, a district court may set aside an entry of default "[f]or good cause shown." Fed. R. Civ. P. 55(c). In determining whether to set aside an entry of default, courts consider the following factors: "whether the conduct of the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious defense, and whether the other party would be prejudiced if the default were excused." *Praxair*

5

*Distribution, Inc. v. Irish Oxygen Co.*, No. 18-CV-1321 (WMW/SER), 2018 WL 11402813, at *1 (D. Minn. Oct. 31, 2018) (quoting *Stephenson v. El-Batrawi*, 524 F.3d 907, 912 (8th Cir. 2008) (quoting *Johnson*, 140 F.3d at 784))). These are the same factors that are "typically relevant in deciding whether to set aside entries of . . . default judgments," but the showing for setting aside entry of default does not require as strong a showing of excuse. *Johnson*, 140 F.3d at 783. And just like the consideration of whether entry of default judgment is appropriate, in the consideration of setting aside a clerk's entry of default, courts are mindful of the preference for adjudication on the merits. *Praxair Distribution*, 2018 WL 11402813, at *1 (citing *Johnson*, 140 F.3d at 784).

### B. Analysis

Considering the procedural history of this case and the relevant factors, the Court sets aside the Clerk's entry of default and denies Delve's motion for default judgment as moot. In significant part, the Court's conclusion is driven by the general preference for adjudication of disputes on their merits. The interest in resolving this dispute on the merits rather than through default proceedings is especially served in this case because Mr. Graham has retained counsel, responded to the Petition's allegations, and asserted his own Counterclaims, all indicating an intent to litigate this matter.

The relevant factors weigh in favor of setting aside the default and letting the parties litigate this case on the merits. Mr. Graham's blameworthiness is the "primary focus" of the inquiry, *Praxair Distribution*, 2018 WL 11402813, at *1, and the reasons for his delay in responding to the Petition are admittedly somewhat oblique. In the memorandum opposing Delve's motion for default judgment, Graham unhelpfully states

that he is not blameworthy or culpable merely because he took more time than ordinarily allowed under the Federal Rules of Civil Procedure to respond to Delve's Petition. More helpfully, he states that after Delve commenced this action, he retained Minnesota counsel to file the Answer and Counterclaims and oppose entry of default judgment. Retaining counsel in a jurisdiction far away from one's home, which for Mr. Graham is in California, can take time, and it can reasonably be inferred that some of the delay in this case is attributable to that endeavor. Still, parties often work out stipulated extensions of time for a defendant to respond to a complaint when obtaining local representation is an issue. Mr. Graham would have been better served by negotiating such an extension or filing a motion seeking one if no agreement could be reached. And he and his counsel could have done a better job informing the Court of the reasons for the delay in this case.

However, having observed that Mr. Graham's untimely response in this case is no model for a defendant's conduct, the Court finds nothing in the record that suggests the delay in this case was contumacious or intentional. Indeed, the Eighth Circuit Court of Appeals has observed that when a party appears to challenge the entry of default, "rather than waiting for grant of a default judgment," it can generally be inferred that the party "was guilty of an oversight and wishes to defend the case on the merits." *Johnson*, 140 F.3d at 784. That is precisely what has happened here—default judgment has not been entered, Mr. Graham has now appeared, and through his filing of the Answer and Counterclaims (albeit untimely) he demonstrates a desire to defend the case on the merits. And the length of the delay in this case, though again not a commendable practice, does not undermine the Court from drawing such an inference here. *See Praxair Distribution*,

2018 WL 11402813, at *2 (stating that the inference that a delay is due to an oversight "is appropriate even when several months elapse between the service of the complaint and the defendant's first response"). Accordingly, Mr. Graham is not blameworthy to such an extent that it would be inappropriate to set aside the entry of default.

The existence of a potentially meritorious defense to Delve's action also weighs in favor of setting aside the default here and denying Delve's motion for default judgment.

> To prevail on a motion to set aside an entry of default, the defaulting party need not show that its defenses are likely to succeed on the merits. Rather, the defaulting party must demonstrate the existence of a defense that, if believed, would permit a verdict in its favor. A bald allegation, without the support of facts underlying the defense, will not sustain the burden of the defaulting party to show cause why the entry of default should be set aside. Allegations supporting a meritorious defense may be presented in the written motion, in an appended proposed answer, or in an attached affidavit.

*Id.* at *3 (cleaned up).

Mr. Graham asserts that he has meritorious defenses and provides allegations supporting them in his Answer and Counterclaims as well as in his response to the default judgment motion. With respect to Delve's request for the Court to compel arbitration of the parties' dispute take place in Minnesota, Mr. Graham asserts that under the relevant provision of the MTSRA, if he objects to the dispute being handled in arbitration, his preference must be honored. Indeed, the MTSRA allows a sales representative to submit an alleged violation of the statute to arbitration, "or in the alternative, at the sales representative's option prior to the arbitration hearing, the sales representative may bring the sales representative's claims in a court of law, and in that event the claims of all parties must be resolved in that forum." Minn. Stat. § 325E.37, subd. 5(a). If Mr. Graham

is correct that this provision prohibits Delve from compelling him to arbitrate his claims against the company, and instead allows him to choose to litigate his claims in a court of law like this one, he would have a meritorious defense Delve's claim that it is "entitled to an order compelling Respondent to arbitrate any dispute under the Contract with such arbitration to take place in Hennepin County in the State of Minnesota. . . ." [ECF No. 1 ¶ 16]. Similarly, this may be a defense to Delve's allegation that Mr. Graham "violated the Contract by refusing to arbitrate claims against Delve . . . according to the terms of the Contract in Hennepin County in the State of Minnesota." [*Id.* ¶ 19]. Accordingly, although it is not concluding that Delve is precluded from obtaining an order compelling Mr. Graham to arbitrate his claims that Delve violated Minnesota law and breached the parties' contract, the Court finds that Mr. Graham has, at a minimum, asserted a potentially meritorious defense to the First and Second Claims for Relief in Delve's Petition.[2]

---

[2] While the parties differ as to whether their dispute should be litigated in a court or through arbitration, the parties appear to now agree that Minnesota is the appropriate venue for their dispute. It seems possible that Delve's primary interest is that the dispute be litigated in Minnesota. If that is true, perhaps the parties could work out a pragmatic solution whereby Graham would abandon his arbitration in California, and the parties would litigate the remaining aspects of their dispute in this Court. Indeed, through its own breach-of-contract claim and motion for default judgment, Delve has asked this Court, rather than an arbitrator, to conclude that Mr. Graham violated the contract by commencing an arbitration in California and is liable for damages equivalent to the costs and legal fees incurred in commencing this case. Having made these observations, the Court clarifies that nothing in this Order precludes Delve from arguing that it is entitled to an order compelling arbitration, nor precludes Mr. Graham from agreeing to arbitrate here. But the Court finds it inappropriate to compel Mr. Graham to arbitrate through a default judgment given his opposition to Delve's request for that relief and the other relevant circumstances discussed in this Order.

Finally, the Court must consider whether excusing the default will be prejudicial to Delve. Nothing in the record suggests that setting aside the default would result in the loss of evidence, create barriers to discovery, or generate "opportunities for fraud and collusion," which is the kind of prejudice that may justify denial of a request to set aside an entry of default. *Praxair Distribution*, 2018 WL 11402813, at *3.

After Mr. Graham filed his Answer and Counterclaims and responded to the motion for default judgment, counsel for Delve filed a declaration in support of the motion for default judgment. [ECF No. 27]. Delve's counsel asserts that "[t]his matter has been complicated by the Respondent filing an answer and counterclaim requiring further response by Petition and counsel for Petitioner thereby increasing attorney time and fees." [ECF No. 27 at 6]. But the increased costs of having to litigate the matter on the merits does not constitute prejudice that weighs against setting aside a party's default. *Praxair Distribution*, 2018 WL 11402813, at *3 ("Neither delay alone nor the fact that the defaulting party will be permitted to defend the action on the merits constitutes sufficient prejudice."). Delve's counsel also asserts that Mr. Graham's initiation of an arbitration in California has caused Delve to incur filing fees, service fees, attorney fees, arbitration fees, and administrative costs through both counsel's efforts to ask Graham to bring the arbitration in Minnesota and in filing this case. [ECF No. 27 at 6]. But given that these expenditures are precisely what Delve claims to be entitled to recover on its breach-of-contract claim, which it seeks to litigate in this Court, the Court finds no prejudice to Delve by setting aside the default and requiring it to litigate that claim on the

merits. For these reasons, the prejudice factor weighs against entry of default judgment and in favor of setting aside the default.

### III. Conclusion and Order

Based on the discussion above, the Court finds good cause to set aside the entry of default. Accordingly, **IT IS HEREBY ORDERED that:**

1. The Clerk's entry of default against Respondent Perry Graham [ECF No. 14] is **SET ASIDE**; and

2. The Petitioner's Motion for Default Judgment [ECF No. 19] is **DENIED AS MOOT** and the August 11, 2022 hearing on Petitioner's motion is **CANCELED**.

Date: July 8, 2022

                                              *s/Katherine Menendez*
                                              Katherine Menendez
                                              United States District Judge